## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JULIE BEAN,** | : | **No. 3:23cv1702** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **THE WYOMING SEMINARY OF THE** | : | |
| **SUSQUEHANNA ANNUAL** | : | |
| **CONFERENCE,** | : | |
| **Defendant** | : | |

## MEMORANDUM

Plaintiff Julie Bean asserts claims in this matter against Defendant

Wyoming Seminary of the Susquehanna Annual Conference ("Wyoming

Seminary") under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C.

§ 621, et seq., Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C § 2000e–2,

and the Pennsylvania Human Relations Act ("PHRA"), 43 PA. STAT. § 951, et seq.

Plaintiff alleges she was terminated as the school's dean of admissions and

financial aid after she complained of discriminatory conduct by Wyoming

Seminary's recently installed interim president.  After plaintiff's internal complaint,

Wyoming Seminary engaged outside counsel to investigate the allegations and

that investigation ultimately led to plaintiff's firing.

Before the court is Wyoming Seminary's claim of attorney-client privilege

and the attorney work product doctrine regarding documents generated by

outside counsel's investigation.  Plaintiff argues that defendant waived any

privilege or protection by the nature of its answer to plaintiff's complaint and its

affirmative defenses.  The court previously conducted a discovery conference,

issued a prior order, and performed an *in camera* review of documents related to

outside counsel's investigation.  This matter is thus ripe for disposition.

**Background**

Plaintiff alleges unlawful discrimination and retaliation based on age and

sex. (Doc. 1, Complaint).  Per her complaint in this matter, plaintiff was hired as

the director of admissions at Wyoming Seminary's Lower School in 2013. (Id. ¶¶

10-11). Plaintiff received promotions over the next several years and served

ultimately as Wyoming Seminary's dean of admissions and financial aid. (Id. ¶

11). Plaintiff alleges that Wyoming Seminary added marketing and

communications, pandemic crisis response, and summer programs

responsibilities to her job purview. (Id.)

According to plaintiff's allegations, Wyoming Seminary's board of trustees

terminated its president in June 2021 and appointed plaintiff and four other

female administrators acting as a senior leadership team to perform the school's

executive functions and resume school operations. (Id. ¶ 12).

Wyoming Seminary then hired a male interim president in August 2021 and

the interim president became plaintiff's immediate supervisor. (Id. ¶ 13).  Per the

2

complaint, the interim president subjected plaintiff to baseless criticism during a meeting on October 7, 2021, and accused her of improper recruitment tactics and financial aid allocations with respect to Wyoming Seminary's wrestling program. (Id. ¶ 15).  Four days later, plaintiff complained to the interim president about his malignment of her during the meeting. (Id. ¶ 16).  Allegedly the interim president responded by stating, "you are all intimidated by me. . .all of you are," in reference to the five women on Wyoming Seminary's senior leadership team. (Id.)  The interim president also allegedly stated, "in what world is it a good idea to put five women in charge of a school?" which plaintiff contends establishes hostile treatment towards her based on sex. (Id.)  Plaintiff avers that the interim president expressed animosity about Wyoming Seminary's female senior leadership team through comments made during a meeting on October 15, 2021. (Id. ¶ 18).  The interim president allegedly stated to plaintiff, "before I came here, my buddy looked up the school and said, 'the leadership team is five women, do you know what you're getting yourself into?' " (Id.)

   Plaintiff also alleges that the interim president reorganized school departments in October 2021 after the above meetings and confrontations. (Id. ¶ 17).  Furthermore, she alleges that the interim president took this action to undermine plaintiff's role at Wyoming Seminary and diminish her responsibilities. Per plaintiff, the interim president removed marketing and communications

responsibilities from her purview and reassigned supervision of this department to the vice president of development. (Id.)  Plaintiff alleges that, although this vice president is also female, this school administrator previously oversaw marketing and communications at a postsecondary institution that failed and closed, and further, is significantly younger and less qualified. (Id.)

Per plaintiff, the interim president then changed plaintiff's job title to director of admissions in November 2021. (Id. ¶ 19).  She alleges that the title change amounted to a demotion. (Id.)  On November 29, 2021, plaintiff complained about her title demotion in a meeting with the interim president. (Id. ¶ 20).  Per plaintiff, the interim president dismissed her complaint, pejoratively called her ambitious, and made a generally negative comment about women with ambition. (Id.)

Later, in February 2022, plaintiff alleges that the interim president excluded her from a finance committee meeting. (Id. ¶ 21).  Per plaintiff, she participated in previous meetings of this nature during her tenure at Wyoming Seminary.  At that finance committee meeting, the interim president allegedly increased the revenue budget for admissions and decreased funding for the financial aid department, which plaintiff contends sabotaged her departments' operations. (Id.)

Plaintiff alleges that she subsequently registered a written complaint of age and sex discrimination with Wyoming Seminary's officers and trustees on February 6, 2022 due to the conduct of the interim president. (Id. ¶ 22).  Per

4

plaintiff, she detailed the above events and remarks by the interim president in
her internal complaint. (Id.) Additionally, plaintiff alleges that the chair of the
board of trustees at Wyoming Seminary excluded other senior school leaders
and the vice chair of the board from handling plaintiff's internal discrimination
complaint. (Id.)

It can be inferred from plaintiff's allegations that Wyoming Seminary
engaged outside counsel to investigate plaintiff's discrimination complaints and
the conduct of the interim president. (See id. ¶¶ 22-23, 26). Outside counsel
then interviewed plaintiff on February 8, 2022 regarding her allegations. (Id. ¶
23). According to plaintiff, additional discrimination and retaliation occurred
during the time of the investigation. (Id. ¶ 24).

On March 4, 2022, outside counsel rendered a finding that defendant's
interim president had not violated Wyoming Seminary's anti-discrimination
policies. (Id. ¶ 25). Per plaintiff, outside counsel also played a part in her
termination on March 8, 2022 along with Wyoming Seminary's chair of the board
of trustees.[1] (Id. ¶ 26). The chair of the board of trustees and outside counsel
are male. (See id. ¶¶ 22-23).

---

[1] Wyoming Seminary's present counsel also indicated that outside counsel's investigation
played a role in plaintiff's termination during a telephone discovery conference.

Plaintiff also alleges that Wyoming Seminary falsely characterized her termination as a voluntary resignation. (Id. ¶ 26). Plaintiff avers that she was replaced in her senior leadership role by a significantly younger, less qualified, and less experienced man. (Id.)

Wyoming Seminary responded to the above allegations in its answer. (Doc. 9). Relevant to the instant discovery dispute, defendant admits that plaintiff registered a written complaint of discrimination concerning the interim president. (Id. ¶ 22). Defendant agrees that outside counsel interviewed plaintiff on February 8, 2022. (Id. ¶ 23). Defendant also admits that outside counsel "conducted an investigation and determined that [defendant's interim president] had not violated [d]efendant's anti-discrimination policies." (Id. ¶ 25). Defendant further agrees that plaintiff's employment was terminated. (Id. ¶ 26). Defendant denies the claims which assert discrimination and retaliation in Counts I-VI of plaintiff's complaint. (Id. ¶¶ 28-49).

Defendant's answer also raises several affirmative defenses, including that: 1) all of defendant's conduct was effectuated for legitimate business reasons; 2) plaintiff was not discriminated against; and 3) plaintiff was not retaliated against. (Id., Affirmative Defenses, ¶¶ 7-9).

Based on the arguments of the parties during the discovery conference as discussed in the prior order, the court concluded that defendant waived attorney-

client privilege and work product protection as it pertains to documents prepared by outside counsel during his investigation into plaintiff's internal complaint of discrimination. After the parties could not agree on the details of the discovery order regarding the investigatory documents, the court conducted an *in camera* review of same. This matter is now ripe for disposition.

**Jurisdiction**

Based on the alleged violations of federal law, this court has jurisdiction pursuant to 28 U.S.C. § 1331. ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). Additionally, the court has jurisdiction under 28 U.S.C. § 1343(a)(3), which confers jurisdiction of any action commenced to redress the deprivation of any right, privilege, or immunity secured by federal law providing for the equal rights of citizens. The court has supplemental jurisdiction over plaintiff's state-law claim pursuant to 28 U.S.C. § 1367(a). ("In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

7

**Analysis**

As discussed above, Wyoming Seminary invokes both attorney-client privilege and the attorney work product doctrine regarding certain documents generated by outside counsel during investigation into plaintiff's complaints of discrimination by the school's interim president. The documents in dispute include: 1) the report of outside counsel regarding investigation into plaintiff's internal complaint and his findings; 2) a summary of the investigation report; 3) correspondence from plaintiff to outside counsel regarding her internal complaint; 4) outside counsel's summaries of interviews with Wyoming Seminary employees; and 5) outside counsel's handwritten notes from those interviews. Wyoming Seminary identifies these documents as DEF000316-000326 and DEF000370-DEF000459. The court will next address waiver of attorney-client privilege as it relates to these documents before considering waiver of the attorney work product doctrine.

### 1. Attorney-Client Privilege

Generally, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1).  The attorney-client privilege limits the normally broad disclosure requirements of Rule 26. Piazza v. Cnty. of

*Luzerne*, No. 3:13-CV-1755, 2015 WL 6690090, at *2 (M.D. Pa. Oct. 30,

2015)(citations omitted).   As articulated:

> The traditional elements of the attorney client privilege that
> identify communications that may be protected from
> disclosure in discovery are: (1) the asserted holder of the
> privilege is or sought to become a client; (2) the person to
> whom the communication was made (a) is a member of the
> bar of a court, or his or her subordinate, and (b) in
> connection with this communication is acting as a lawyer;
> (3) the communication relates to a fact of which the
> attorney was informed (a) by his client (b) without the
> presence of strangers (c) for the purpose of securing
> primarily either (i) an opinion of law or (ii) legal services or
> (iii) assistance in some legal proceeding, and (d) not for the
> purpose of committing a crime or tort; and (4) the privilege
> has been (a) claimed and (b) not waived by the client.

*Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 862 (3d
Cir. 1994)("*Rhone-Poulenc*")(citations omitted).

   The purpose of the attorney-client privilege is to ensure that clients may

obtain legal advice from their attorneys in confidence. Id. at 864.

   Although attorney-client privilege is worthy of maximum legal protection, "its

limitation on discovery also requires that the privilege must be strictly confined

within its narrowest possible limits consistent with the logic of its principle."

*Piazza*, 2015 WL 6690090, at *2 (citing *Rhone-Poulenc*, 32 F.3d at 862; *In re*

*Grand Jury Investigation*, 599 F.2d 1224, 1235 (3d Cir. 1979)(internal quotation

marks removed and further citations omitted)).   Furthermore, the attorney-client

privilege is not absolute and cannot simultaneously be used both as a shield and

a sword. Merisant Co. v. McNeil Nutritionals, LLC, 242 F.R.D. 303, 311 (E.D. Pa. 2007)(citing Berckeley Inv. Group, Ltd. v. Colkitt, 455 F.3d 195, 222 (3d Cir. 2006)); EagleView Techs., Inc. v. Xactware Sols., Inc., 522 F. Supp. 3d 40, 50 (D.N.J. 2021)(citations omitted); Worthington v. Endee, 177 F.R.D. 113, 116 (N.D.N.Y. 1998)(citations omitted).

"[A] party can waive the attorney client privilege by asserting claims or defenses that put his or her attorney's advice in issue in the litigation." Rhone-Poulenc, 32 F.3d at 863 (collecting and reviewing cases). Accordingly, there is a two-step inquiry into determining whether the privilege has been placed in issue: 1) the assertion of a claim or defense; and 2) an attempt to prove that claim or defense by disclosing or describing an attorney-client communication. Id.

Here, Wyoming Seminary does not explicitly plead "advice of counsel" as an affirmative defense in its answer. Defendant's answer, however, signals that outside counsel's investigation will form the basis of its affirmative defenses in this matter. (Doc. 9, Answer ¶ 25, Affirmative Defenses, ¶¶ 7-9). Outside counsel's investigation into plaintiff's internal complaints of discrimination by Wyoming Seminary's interim president led to plaintiff's termination shortly after the conclusion of that investigation. When Wyoming Seminary states in its affirmative defenses that defendant acted with a legitimate business purpose and plaintiff was neither discriminated nor retaliated against, the details of outside

10

counsel's investigation and the contents of his report are incorporated into those defenses.

As for whether Wyoming Seminary's defenses will rely on outside counsel's investigation materials to prove its defenses, there are important considerations in this case because plaintiff proceeds under Title VII, the ADEA, and the PHRA. In moving forward, plaintiff must rely on indirect evidence of discrimination and the McDonnell Douglas burden shifting framework applies.  See Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media, 589 U.S. ----, 140 S. Ct. 1009, 1019 (2020) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973)).

Under this familiar three-step framework, the plaintiff must first make a prima facie showing. Jones v. Sch. Dist. of Philadelphia, 198 F.3d 403, 410 (3d Cir. 1999)(discussing McDonnell Douglas Corp., 411 U.S. at 802).  "If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Id. (citation and quotation marks omitted).  "Finally, should the defendant carry this burden, the plaintiff then must have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Id. (citing Texas Dep't of Cmty. Affs. v. Burdine, 450 U.S. 248, 253 (1981)).

Because of plaintiff's termination after outside counsel's investigation, the subject matter and contents of that investigation will be used by the defendant under the McDonnell Douglas framework to: 1) challenge elements of plaintiff's *prima facie* case, 2) establish Wyoming Seminary's legitimate, nondiscriminatory reasons for terminating plaintiff; and 3) eliminate or severely undercut plaintiff's opportunity to show that those reasons are fabricated or pretextual.[2]   The documents from outside counsel's investigation are thus "in issue" in this litigation. See Rhone-Poulenc, 32 F.3d at 863; Pittston Co. v. Allianz Ins. Co., 143 F.R.D. 66, 71 (D.N.J. 1992).

As discussed in the prior order, the use of outside counsel in a workplace investigation does not automatically shield discovery into that investigation. Waiver of attorney-client privilege can occur when an employer relies on the adequacy of a workplace investigation by an attorney as a defense to discrimination and retaliation claims, since the privilege can be used as a sword and a shield. See Brownell v. Roadway Package Sys., Inc., 185 F.R.D. 19, 25 (N.D.N.Y. 1999).  Where an employer defends itself by relying on its response to an employee's allegations, the adequacy of that investigation becomes critical to the issue of liability. Id.  In Brownell, the court concluded that the only way a Title

---

[2] Wyoming Seminary has not otherwise expressly disclaimed that it will avoid reliance on the investigation in its defenses.

VII plaintiff can determine the reasonableness of an attorney-guided investigation is the full disclosure of its contents.  Id.; see also Harding v. Dana Transp., Inc., 914 F.Supp. 1084 (D.N.J. 1996)(finding waiver and discussing how the attorney-client privilege yields to principles of fairness and equity in permitting a plaintiff to discover the content of an attorney-led investigation where a defendant attempts to use the results of an investigation in their defense).

In this matter, the materials from outside counsel's investigation will be used by the defendant as a sword in response to plaintiff's discrimination and retaliation claims and the defendant is attempting to shield these documents from discovery.  Thus, the defendant has waived attorney-client privilege regarding the disputed documents.

### 2. Work Product Protection

As discussed next, the disputed documents are also subject to defendant's invocation of the attorney work product doctrine regarding outside counsel's investigation materials.[3]  Work product protection is governed by a uniform federal standard embodied in Federal Rule of Civil Procedure 26(b)(3).  "[I]tems

---

[3] Federal Rule of Civil Procedure 26(b)(5) requires that a party expressly make the claim of privilege or protection. FED. R. CIV. P. 26(b)(5)(A)(i).  Defendant's responses to document requests 7, 12-14, and 18-19 only raise attorney-client privilege as a reason for the redactions. After earlier uncertainty about whether Wyoming Seminary expressly invoked the attorney work product doctrine, the court concludes that it has.  As part of resolving this discovery dispute, Wyoming Seminary produced its privilege log for the in camera review.  In the privilege log, the defendant clearly cites both attorney-client privilege and the attorney work product doctrine as the reasons for redaction.

prepared in anticipation of litigation are generally protected from discovery by an opposing party[,]" under Rule 26(b)(3).  In re Linerboard Antitrust Litig., 237 F.R.D. 373, 381 (E.D. Pa. 2006).  In the context of an internal investigation by outside counsel, documents such as the ones at issue here are made in anticipation of litigation for the purposes of the work product doctrine. Id. (citing Upjohn Co. v. United States, 449 U.S. 383, 390 (1981)).

Rule 26(b)(3) establishes two tiers of protection for work product: 1) fact work product, see FED. R. CIV. P. 26(b)(3)(A), and 2) opinion work product, see FED. R. CIV. P. 26(b)(3)(B).  "Fact work product is discoverable only upon a showing 'substantial need' and by demonstrating that one cannot otherwise obtain the 'substantial equivalent' of such materials without 'undue hardship.' " In re Linerboard Antitrust Litig., 237 F.R.D. at 381 (quoting FED. R. CIV. P. 26(b)(3)(A)(ii)).  Opinion work product encompasses "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation[,]" and courts are directed to protect against these disclosures if the court orders discovery of documents prepared in anticipation of litigation or trial. FED. R. CIV. P. 26(b)(3)(B).  Opinion work product "receives greater protection than ordinary work product and is discoverable only upon a showing of rare and exceptional circumstances." In re Cendant Corp. Sec. Litig., 343 F.3d 658, 663 (3d Cir. 2003).

14

Like attorney-client privilege, attorney work product protection may also be waived by placing that work product in issue, regardless of whether that work product involves fact or opinion. As stated, "the standard for waiving the work-product doctrine should be no more stringent than the standard for waiving the attorney-client privilege." Westinghouse Elec. Corp. v. Republic of Philippines, 951 F.2d 1414, 1429 (3d Cir. 1991). Like attorney-client privilege, defendants cannot use attorney work product as a shield while also using it as a sword. See Harding, 914 F.Supp. at 1097-99; Thomas v. Marshall Pub. Sch., No. 21-CV-2581 (PJS/DJF), --- F. Supp. 3d ----, 2023 WL 5743611, at *7 (D. Minn. Sept. 6, 2023); Reitz v. City of Mt. Juliet, 680 F. Supp. 2d 888, 892 (M.D. Tenn. 2010); Walker v. Cnty. of Contra Costa, 227 F.R.D. 529, 533-34 (N.D. Cal. 2005).

The same at issue waiver considerations regarding attorney-client privilege apply to waiver of the attorney work-product doctrine. No adverse action was taken against the interim president based on his alleged discrimination of plaintiff after an internal complaint and investigation by counsel. Rather, at some point during outside counsel's investigation, the focus shifted from the interim president's alleged discrimination against plaintiff to plaintiff's own conduct and led to her termination shortly after the investigation concluded. Thus, outside counsel's investigation will be used to further Wyoming Seminary's defense that it had a legitimate, non-discriminatory reason in terminating plaintiff and that she

15

was not otherwise discriminated or retaliated against. Thus, the court concludes

that there has been waiver of the attorney work product doctrine regarding

outside counsel's investigatory documents.

This waiver must be refined now, however, after the *in camera* review. The

Third Circuit Court of Appeals has counseled that implied waivers are to be

construed narrowly in discovery disputes. In re Teleglobe Commc'ns Corp., 493

F.3d 345, 378 (3d Cir. 2007), as amended (Oct. 12, 2007)(citations omitted).

Furthermore, principles of fairness and consistency guide courts in determining

the extent of such waivers. Harding, 914 F. Supp. at 1099; Thomas, 2023 WL

5743611 at * 10; see also McGrath v. Nassau Cnty. Health Care Corp., 204

F.R.D. 240, 244 (E.D.N.Y. 2001) ("fairness and prejudice concerns define the

scope of any work product waiver").

The portions of outside counsel's investigation involving whether Wyoming

Seminary's internal anti-discrimination policies were violated by the interim

president are directly related to their defenses in this matter that Wyoming

Seminary did not discriminate or retaliate against plaintiff. Additionally, the

portions of outside counsel's investigation into plaintiff's conduct are directly

related to their defenses that Wyoming Seminary acted with legitimate business

purposes in terminating plaintiff. There are, however, other portions of the

investigation report and summaries of witness interviews reflecting counsel's

16

legal analysis, opinions, and evaluations of witness credibility clearly anticipating plaintiff's claims in this lawsuit.  These portions are more akin to intra-litigation analysis advising Wyoming Seminary of the strengths and weaknesses of both sides' positions.  The court finds that the scope of implied waiver of work product protection does not extend to these specific portions of outside counsel's investigative materials. See Walker, 227 F.R.D. at 535 (holding that, despite a finding of waiver of the work product doctrine, attorney opinions in the findings and conclusions section of a prelitigation investigation report may reflect advice to the employer about matters within the litigation not subject to waiver).  As discussed below, portions of the disputed documents where counsel has expressly provided his opinions relative to this litigation as then anticipated will remain subject to work product protection.

### 3. Application of Waiver to the Disputed Documents

After conducting the prior discovery conference and performing an *in camera* review, and for the reasons set forth above, Wyoming Seminary has waived attorney-client privilege and attorney work product protection.  Except as specifically indicated below, Wyoming Seminary will be ordered to serve unredacted copies of the documents identified as DEF000316-000326 and DEF000370-DEF000459 within ten (10) days.  Certain portions of the documents remain subject to attorney work product protection as follows:

17

- **DEF000316-DEF000324** – Report of Lars H. Anderson, Esq. to Wyoming Seminary, March 2, 2022 - Attorney work-product protection is not waived regarding Section 3, Findings and Recommendations (DEF000321-DEF000324).  Wyoming Seminary may maintain redactions as to this section of the investigation report only.  Otherwise, the report shall be served on plaintiff in unredacted form.

- **DEF000325-DEF000326** – Summary of Report of Lars H. Anderson, Esq. to the Wyoming Seminary board of trustees - Attorney work-product protection is not waived regarding Section 3, Findings and Recommendations (DEF000325-DEF000326).  Wyoming Seminary may maintain redactions as to this section of the summary only.  Otherwise, the investigation report summary shall be served on plaintiff in unredacted form.

- **DEF000372-DEF000375** – Memorandum, Rachel Bartron Interview Summary 02/15/2022 – Attorney work-product protection is not waived regarding the final paragraph of the narrative on DEF000375.  Otherwise, this interview summary shall be served on plaintiff in unredacted form.

- **DEF000382-DEF000385** – Memorandum, Julie Calabro Interview Summary 02/10/2022 – Attorney work-product protection is not waived regarding the first paragraph on DEF000384.  Attorney work-product

18

protection is also not waived regarding the final paragraph of the narrative on DEF000385.  Otherwise, this interview summary shall be served on plaintiff in unredacted form.

- **DEF000392-DEF000394** – Memorandum, Kathy Hanlon Interview Summary 02/12/2022 – Attorney work-product protection is not waived regarding the final paragraph of the narrative on DEF000394.  Otherwise, this interview summary shall be served on plaintiff in unredacted form.

- **DEF000413-DEF000415** – Memorandum, Nicole Brogan Interview Summary 02/17/2022 – Attorney work-product protection is not waived regarding the final paragraph of the narrative on DEF000415.  Otherwise, this interview summary shall be served on plaintiff in unredacted form.

- **DEF000419-DEF000422** – Memorandum, Nina Moser Interview Summary 02/15/2022 – Attorney work-product protection is not waived regarding the final paragraph of the narrative on DEF000422.  Otherwise, this interview summary shall be served on plaintiff in unredacted form.

- **DEF000428-DEF000429** – Memorandum, Nathan Kuhl Interview Summary 02/28/2022 – Attorney work-product protection is not waived regarding the final paragraph of the narrative on DEF000422.  Otherwise, this interview summary shall be served on plaintiff in unredacted form.

- **DEF000432-DEF000433** – Memorandum, Jason Sherry Interview Summary 02/28/2022 – Attorney work-product protection is not waived regarding the final paragraph of the narrative on DEF000433.  Otherwise, this interview summary shall be served on plaintiff in unredacted form.

- **DEF000436-DEF000438** – Memorandum, Karen Klassner Interview Summary 03/01/2022 – Attorney work-product protection is not waived regarding the final paragraph of the narrative on DEF000438.  Otherwise, this interview summary shall be served on plaintiff in unredacted form.

- **DEF000443-DEF000445** – Memorandum, Julie Bean Interview Summary 02/22/2022 – Attorney work-product protection is not waived regarding the final paragraph of the narrative on DEF000445.  Otherwise, this interview summary shall be served on plaintiff in unredacted form.

**Conclusion**

For the reasons set forth above, Defendant Wyoming Seminary shall serve copies of DEF000316-000326 and DEF000370-DEF000459 on plaintiff within ten (10) days, subject to the redactions detailed in this memorandum.  An appropriate order follows.

Date: 3/20/24

JUDGE JULIA K. MUNLEY
United States District Court